**Aug 27, 2019**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**19-20538-CR-WILLIAMS/TORRES**
CASE NO. _____

18 U.S.C. § 371
18 U.S.C. § 554(a)
16 U.S.C. § 3373(d)(3)(A)

**UNITED STATES OF AMERICA**

vs.

**NAI CHUN VINCENT CHEUNG,**
a/k/a "Vincent Cheung,"
and
**MICHAEL ALLEN PATA,**

Defendants.
_____ /

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At various times relevant to this Indictment:

#### The Convention on International Trade in Endangered
#### Species of Wild Fauna and Flora

1. The United States was a signatory to an international treaty known as the "Convention on International Trade in Endangered Species of Wild Fauna and Flora," 27 U.S.T. 1087, T.I.A.S. 8249 (hereinafter "CITES"). CITES provides a mechanism for regulating international commercial trade in species of wildlife whose continued survival is threatened by such trade. The various wildlife species that have attained protected status under CITES are listed by species name and placed within three "appendices" to CITES which correlate to the level of protection deemed necessary to protect the species.

2.      Appendix I of CITES identifies wildlife species which are actually threatened with extinction and for which trade in such species is subjected to particularly strict regulation.  CITES, Art. II § 1.  The exportation of CITES Appendix I species is only authorized in exceptional circumstances, such as scientific and research purposes, and no exportation of Appendix I wildlife primarily for commercial purposes is allowed.  CITES, Art. III § 2, 3 & 4.

3.      Appendix II of CITES lists certain wildlife species which, although not necessarily threatened with extinction, may become so without strict regulations and limitations placed upon trading in specimens of such species.  CITES, Art. II, § 2(a).  Although commercial trade in Appendix II species is permissible, it is strictly regulated and subject to stringent requirements. Generally, for such trade, exporting countries, including the United States, must issue an export permit (or valid foreign re-export certificate) after determining that: (a) ". . . such export will not be detrimental to the survival of that species, (b) . . . the specimen was not obtained in contravention of the laws of [the exporting country] for the protection of flora and fauna; and . . . (c) any living specimen will be so prepared and shipped as to minimize the risk of injury, damage to health or cruel treatment."  CITES, Art. IV, § 2, 5.

**The Endangered Species Act and Related Regulations**

4.      CITES is implemented in the United States by the Endangered Species Act of 1973 (16 U.S.C. §§ 1531-1544) (hereinafter "ESA").  *See* 16 U.S.C. § 1537(a).  The ESA states that it is "unlawful for any person . . . to engage in any trade in any specimens [of wildlife] contrary to the provisions of [CITES], or to possess any specimens traded contrary to the provisions of [CITES]" or attempt to do so.  *See* 16 U.S.C. § 1538(c)(1), 1538(g).  The term "trade" is further defined in Article 1(c) of CITES to include, among other activities, to "export."

2

5.      The requirements of CITES are further implemented in the United States through federal regulations which enforce CITES permitting requirements and require a CITES export permit or re-export certificate issued by the United States prior to the exportation of any CITES-protected wildlife from the United States. *See* 50 C.F.R. §§ 23.13, 23.20(e), 23.23, 23.92. Moreover, these same regulations provide that exporting or engaging in international trade of any species listed in Appendix I or II of CITES without adherence to CITES permitting requirements is unlawful, and any attempt to commit, solicit another to commit, or cause to be committed such activity is likewise unlawful. *See* 50 C.F.R. §§ 23.13(a), 23.13(f).

6.      In addition to enforcing the requirements of CITES, regulations enacted under the ESA also required that an exporter of wildlife complete a "Declaration for Importation or Exportation of Fish or Wildlife" (USFWS Form 3-177) and submit it to the United States Fish and Wildlife Service (USFWS) prior to the exportation of wildlife. This official form requires that each item of wildlife be listed along with their respective species names, their CITES permit numbers (for CITES-protected species), the quantity of each species, and the monetary values of each species, and includes a certification by the exporter or the exporter's agent attesting to the truth and completeness of the form to the best of his/her knowledge and belief. *See* 50 C.F.R. §§ 14.61, 14.63. Moreover, the USFWS Form 3-177 and other documents, including invoices, waybills, and any required CITES export permits, were required to be produced to an officer of the USFWS or a Customs officer before obtaining export clearance. 50 C.F.R. § 14.52.

7.      Section 1538(e) of the ESA (16 U.S.C. § 1538(e)) made it "unlawful for any person . . . exporting . . . wildlife . . . to fail to file any declaration or report as the Secretary [of the Department of the Interior] deems necessary to facilitate enforcement of this chapter [of the ESA]

. . . ." Such necessary declarations or reports include the required individual declarations set forth upon USFWS Form 3-177 identifying each species of wildlife intended for export.

### The Lacey Act

8.     The Lacey Act, 16 U.S.C. §§ 3371-3378, made it "unlawful for any person to make or submit any false record, account, or label for, or any false identification of, any . . . wildlife . . . which has been, or is intended to be – (1) . . . exported, transported, sold, [or] purchased . . . or (2) transported in interstate or foreign commerce." *See* 16 U.S.C. § 3372(d)(1)&(2).

9.     In addition, the Lacey Act made it "unlawful for any person – (2) to . . . export, transport, sell, receive, acquire or purchase in interstate or foreign commerce – (A) any . . . wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State . . . .", or attempt to do so. *See* 16 U.S.C. § 3372(a)(2)(A), 3372(a)(4).

### Florida Regulations Regarding Turtles

10.     In the State of Florida, turtles in the wild are protected in accordance with Florida Administrative Code 68A-25.002(6)(c), which states . . . "No person shall buy, sell, or possess for sale turtles, their eggs or parts thereof, that have been taken from the wild."

### The Defendants

11.     Defendant **NAI CHUN VINCENT CHEUNG,** a/k/a **Vincent Cheung** (hereinafter **"VINCENT CHEUNG"** or **"CHEUNG"**), was a resident of Hong Kong who was engaged in the business of commercial shipment of wildlife exported from the United States and elsewhere to Hong Kong through a Hong Kong-based business identified on pertinent export and shipping documents as "Reptiles Paradise, M/F 140 Tung Choi Street, Mong Kong, Kowloon, Hong Kong."

12.     Defendant **MICHAEL ALLEN PATA** was a resident of Eustice, Florida who was engaged in the business of both the commercial purchase, acquisition and collection of wildlife

4

from within the United States, and the subsequent shipment and exportation of such wildlife from the United States to **VINCENT CHEUNG** in Hong Kong through a business identified as "Reptile Paradise."

13.     Reptile Paradise was a business name related to Reptile Paradise, LLC, a Florida corporation operated by **PATA** and identified on pertinent export and shipping documents as "Reptile Paradise 3200 Lake Johanna Drive, Eustis, Florida."

### COUNT 1
**Conspiracy**
**(18 U.S.C. §371)**

1.     The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.     Beginning at least as early as in or around June 1, 2017, to in or around June 6, 2019, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**NAI CHUN VINCENT CHEUNG,**
**a/k/a "Vincent Cheung,"**
**and**
**MICHAEL ALLEN PATA,**

did knowingly, that is, with the intent to further the objects of the conspiracy, and willfully combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury:

a.     to fraudulently and knowingly export and send from the United States, merchandise, articles, and objects consisting of certain species of wildlife, contrary to any law and regulation of the United States, namely, the Endangered Species Act, 16 U.S.C. §§ 1538(c)(1) & (e) and 50 C.F.R. § 23.13(a), in violation of 18 U.S.C. § 554;

b.     to knowingly export wildlife known to have been taken, possessed, transported and sold in violation of the laws and regulations of the State of Florida, namely, Florida Administrative

5

Code 68A-25.002(6)(c), in violation of 16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(1)(A);

c.       to knowingly make and submit, and cause to be made and submitted, false records and labels for, and false identification of, certain species of wildlife that had been or were intended to be transported in foreign commerce and exported, in violation of 16 U.S.C. §§ 3372(d) and 3373(d)(3)(A); and

d.       to defraud the United States by impairing, impeding, obstructing, and defeating, through deceit, craft and trickery, the lawful governmental functions of the United States Fish and Wildlife Service in its oversight and enforcement of the Endangered Species Act,

in violation of 18 U.S.C. § 371.

## THE PURPOSE OF THE CONSPIRACY

3.       It was a purpose of the conspiracy for the defendants and their co-conspirators to unjustly enrich themselves and others by operating a joint business undertaking engaged in the unlawful purchase, collection, possession, transportation, shipment, sale, and exportation of protected wildlife.

## MANNER AND MEANS

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.       **VINCENT CHEUNG** and **MICHAEL ALLEN PATA** would communicate by means of email and wireless voice and text message communications, as well as "WeChat," a cellphone application which would transmit both text messages and voice communications internationally over the internet.

5.       Through these devices, **VINCENT CHEUNG** would supply **MICHAEL ALLEN PATA** with lists of specific species of protected reptile wildlife and the estimated quantity of each

such species which **CHEUNG** desired to be exported to his business in Hong Kong from the United States through Miami International Airport, in Miami-Dade County, in the Southern District of Florida.

6.      As part of their joint business undertaking, **VINCENT CHEUNG** frequently sought to obtain, through the efforts of **MICHAEL ALLEN PATA**, various species of CITES Appendix II protected wildlife, including Florida Box Turtles (*Terrapene Carolina Bauri*), Spotted Turtles (*Clemmys Guttata*), and also included various other species of turtles, including the Eastern Mud Turtle (*Kinosternon Subrubrum*) as well as the Striped Mud Turtle (*Kinosternon baurii*), which were not CITES-protected species, but protected from  aspects of commercial trade by Florida law.

7.      **MICHAEL PATA**, acting upon **VINCENT CHEUNG**'s instructions, and in accordance with orders for wildlife which **CHEUNG** had placed, would purchase and acquire certain of the requested species which were CITES-protected, as well as other requested species, from at least one co-conspirator who had unlawfully taken and caused to be taken these live reptiles from their natural habitat in Florida for commercial purposes in violation of Florida law.

8.      **VINCENT CHEUNG** and **MICHAEL PATA** would undertake various actions designed to unlawfully and fraudulently conceal the presence of such CITES-protected wildlife in certain of their shipments in order to avoid legal declaration requirements and related permitting restrictions necessary to obtain export clearance.

9.      **MICHAEL PATA**, at the direction of **VINCENT CHEUNG**, would pack the live wildlife specimens interspersed in shipping cartons that contained non-CITES wildlife in order to insure that USFWS inspectors or U.S. Customs personnel did not detect the presence of unpermitted and undeclared CITES-protected species in their shipments.

7

10. **MICHAEL PATA** and his business, Reptile Paradise, as the designated U.S. "exporter," would deliver, and cause to be delivered, each of the shipments containing undeclared, unpermitted CITES-protected wildlife to Miami International Airport for placement upon air carrier flights which would deliver the shipments to **VINCENT CHEUNG** and his Hong Kong business, Reptiles Paradise, the designated "foreign importer."

11. **MICHAEL PATA** and **VINCENT CHEUNG**, would cause information to be supplied to USFWS in order to obtain export clearance for their unlawful wildlife shipments, which **PATA** and **CHEUNG** knew to be materially false, including USFWS Forms 3-177 and invoices that failed to declare and itemize the presence of unpermitted CITES-protected wildlife in the shipments.

12. **MICHAEL PATA** would, upon the completion of each unlawful export transaction, send emails to **CHEUNG** attaching a parallel invoice strictly for internal use between **CHEUNG** and **PATA** which referenced the same invoice number as the original false and fraudulent invoice supplied to USFWS, but which included the concealed CITES-protected wildlife in the shipment and the price for each of the concealed species of wildlife.

13. **VINCENT CHEUNG** would wire transfer the true amount due and owing to **MICHAEL PATA** in order to pay for the wildlife shipment, including specimens of protected wildlife which had been exported to **CHEUNG** along with an amount intended as a commission payment to **PATA**.

14. **VINCENT CHEUNG** and **MICHAEL PATA** would make use of coded language in place of common species names when referring to particular CITES-protected wildlife while communicating regarding the specifics of their unlawful wildlife exportations, using such terms as "ear infection(s)" in place of Florida Box Turtle (*Terrapene Carolina Bauri*), "small high color

cooter(s)" in place of Spotted Turtle (*Clemmys Guttata*), and "purple color" in place of Diamond Back Terrapin (*Malaclemys Terrapin*).

## OVERT ACTS

In furtherance of the conspiracy, and in order to achieve its unlawful objectives, at least one of the co-conspirators committed or caused to be committed, at least one of the following overt acts, among others, within the Southern District of Florida, and elsewhere:

1-7.    On or about the dates set forth below, **MICHAEL ALLEN PATA** caused a shipment of specific species of wildlife which **VINCENT CHEUNG** had requested to be packaged for export and thereafter exported by air carrier from Miami International Airport to **CHEUNG** and his business, Reptiles Paradise, in Hong Kong.

| OVERT ACT | DATE |
|-----------|------|
| 1 | June 15, 2017 |
| 2 | March 24, 2018 |
| 3 | June 14, 2018 |
| 4 | August 23, 2018 |
| 5 | November 30, 2018 |
| 6 | March 21, 2019 |
| 7 | April 18, 2019 |

8-14.   On or about the dates set forth below, **MICHAEL ALLEN PATA** supplied an invoice to **VINCENT CHEUNG** itemizing amounts due from **CHEUNG**.

| OVERT ACT | DATE |
|-----------|------|
| 8 | June 17, 2017 |
| 9 | March 26, 2018 |

| OVERT ACT | DATE |
|-----------|------|
| 10 | June 16, 2018 |
| 11 | August 25, 2018 |
| 12 | December 2, 2018 |
| 13 | March 22, 2019 |
| 14 | April 19, 2019 |

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### Smuggling Goods from the United States
### (18 U.S.C. §554)

1.     The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.     On or about March 21, 2019, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**NAI CHUN VINCENT CHEUNG,**
**a/k/a "Vincent Cheung,"**
**and**
**MICHAEL ALLEN PATA,**

fraudulently and knowingly exported and sent, and attempted to export and send from the United States merchandise, articles, and objects, namely, turtles, contrary to law and regulation of the United States, specifically, contrary to the Endangered Species Act, 16 U.S.C. § 1538(c)(1) & (e), 50 C.F.R. §§ 23.13(a), 23.13(f), and the Lacey Act, 16 U.S.C. § 3372(d), all in violation of 18 U.S.C. §§ 554 and 2.

## COUNT 3
### Lacey Act
### (16 U.S.C. §§ 3372(d) and 3373(d)(3)(A))

1.     The General Allegations section of this Indictment is re-alleged and incorporated

10

by reference as though fully set forth herein.

    2.    On or about March 19, 2019, in Miami-Dade County, in the Southern District of

Florida, and elsewhere, the defendants,

**NAI CHUN VINCENT CHEUNG,**
**a/k/a "Vincent Cheung,"**
**and**
**MICHAEL ALLEN PATA,**

knowingly submitted and caused to be submitted to the USFWS a false record of wildlife that was

intended to be transported and exported in foreign commerce, that is a USFWS Form 3-177

"Declaration for Importation or Exportation of Wildlife," which falsely attested that all species of

wildlife comprising the shipment to which the Form 3-177 related had been declared and listed

upon the Form 3-177 when, in truth and in fact, as the defendants then knew, additional species

consisting of approximately twenty-four (24) Florida Box Turtles (*Terrapene Carolina Bauri*), a

CITES Appendix II protected species, were contained within the shipment, in violation of 16

U.S.C. §§ 3372(d)(2) and 3373(d)(3)(A) and 18 U.S.C. § 2.

### COUNT 4
**Smuggling Goods from the United States**
**(18 U.S.C. §554)**

    1.    The General Allegations section of this Indictment is re-alleged and incorporated

by reference as though fully set forth herein.

    2.    On or about April 18, 2019, in Miami-Dade County, in the Southern District of

Florida, and elsewhere, the defendants,

**NAI CHUN VINCENT CHEUNG,**
**a/k/a "Vincent Cheung,"**
**and**
**MICHAEL ALLEN PATA,**

fraudulently and knowingly exported and sent, and attempted to export and send from the United

11

States merchandise, articles, and objects, namely, turtles, contrary to law and regulation of the United States, specifically contrary to the Endangered Species Act, 16 U.S.C. § 1538(c)(1) & (e), 50 C.F.R. §§ 23.13(a) & (f), and the Lacey Act, 16 U.S.C. § 3372(d), in violation of 18 U.S.C. §§ 554 and 2.

## COUNT 5
### Lacey Act
### (16 U.S.C. §§ 3372(d) and 3373(d)(3)(A))

1.     The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.     On or about April 16, 2019, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**NAI CHUN VINCENT CHEUNG,**
**a/k/a "Vincent Cheung,"**
**and**
**MICHAEL ALLEN PATA,**

knowingly submitted and caused to be submitted to the USFWS, a false record of wildlife that was intended to be transported and exported in foreign commerce, that is, a USFWS Form 3-177 "Declaration for Importation or Exportation of Wildlife," which falsely attested that all species of wildlife comprising the shipment to which the Form 3-177 related had been declared and listed upon the Form 3-177 when, in truth and in fact, as the defendants then knew, additional species consisting of approximately forty-nine (49) Florida Box Turtles (*Terrapene Carolina Bauri*), a CITES Appendix II protected species, and 12 Spotted Turtles (*Clemmys Guttata*), a CITES Appendix II protected species, were contained within the shipment, in violation of 16 U.S.C. §§ 3372(d)(2) and 3373(d)(3)(A), and 18 U.S.C. § 2.

12

## COUNTS 6-8
### Attempted Smuggling of Goods from the United States
### (18 U.S.C. §554)

1.     The General Allegations section of this Indictment is re-alleged and incorporated

by reference as though fully set forth herein.

2.     On or about each of the dates listed as to each count below, in Miami-Dade County,

in the Southern District of Florida, and elsewhere, the defendant,

### NAI CHUN VINCENT CHEUNG,
### a/k/a "Vincent Cheung,"

fraudulently and knowingly attempted to export and send from the United States merchandise,

articles, and objects, namely, turtles, contrary to law and regulation of the United States,

specifically contrary to the Endangered Species Act, 16 U.S.C. § 1538(c)(1) & (e), and 50 C.F.R.

§§ 23.13(a), 23.13(f):

| COUNT | DATE |
|-------|------|
| 6 | June 20, 2019 |
| 7 | July 4, 2019 |
| 8 | July 25, 2019 |

In violation of 18 U.S.C. § 554 and 2.

A TRUE BILL ⁄

FOREPERSON

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

PETER B. OUTERBRIDGE
ASSISTANT UNITED STATES ATTORNEY

13

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

CASE NO._____

v.

## CERTIFICATE OF TRIAL ATTORNEY*

NAI CHUN VINCENT CHEUNG, a/k/a "Vincent Cheung," and
MICHAEL ALLEN PATA,

**Superseding Case Information:**

_____**Defendant.**_____/

| | | | |
|---|---|---|---|
| **Court Division:** (Select One) | | New defendant(s) | Yes \_\_\_\_ No ✓ |
| ✓ Miami \_\_\_ Key West | | Number of new defendants | \_\_\_\_ |
| \_\_\_ FTL \_\_\_ WPB \_\_\_ FTP | | Total number of counts | \_\_\_\_ |

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:   (Yes or No)   Yes
   List language and/or dialect   Cantonese

4. This case will take   10   days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                              (Check only one)

   | | | | | | |
   |---|---|---|---|---|---|
   | I | 0 to 5 days | \_\_\_\_ | Petty | \_\_\_\_ |
   | II | 6 to 10 days | ✓ | Minor | \_\_\_\_ |
   | III | 11 to 20 days | \_\_\_\_ | Misdem. | \_\_\_\_ |
   | IV | 21 to 60 days | \_\_\_\_ | Felony | ✓ |
   | V | 61 days and over | | | |

6. Has this case previously been filed in this District Court?   (Yes or No)   No
   If yes: Judge_____ Case No._____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   Yes
   If yes: Magistrate Case No.   18-MJ-03248-AOR
   Related miscellaneous numbers:_____
   Defendant(s) in federal custody as of_____
   Defendant(s) in state custody as of_____
   Rule 20 from the District of_____

   Is this a potential death penalty case? (Yes or No)   No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?   Yes \_\_\_\_   No ✓

8. Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?   Yes \_\_\_\_   No ✓

PETER B. OUTERBRIDGE
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 289914

*Penalty Sheet(s) attached

REV 8/13/2018

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** **NAI CHUN VINCENT CHEUNG, a/k/a "Vincent Cheung"**

**Case No:** _____

Count # 1:

Conspiracy

Title 18, United States Code, Section 371

**\*Max. Penalty:**        Five (5) Years' Imprisonment

Counts # 2,4,6,7, & 8:

Smuggling Goods from the United States

Title 18, United States Code, Section 554

**\*Max. Penalty:**        Ten (10) Years' Imprisonment

Counts # 3 & 5:

Lacey Act

Title 16, United States Code, Sections 3372(d) and 3373(d)(3)(A)

**\*Max. Penalty:**        Five (5) Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name: MICHAEL ALLEN PATA**

**Case No**:

Count # 1:

Conspiracy

Title 18, United States Code, Section 371

**\*Max. Penalty:**      Five (5) Years' Imprisonment

Counts # 2 & 4:

Smuggling Goods from the United States

Title 18, United States Code, Section 554

**\*Max. Penalty:**      Ten (10) Years' Imprisonment

Counts # 3 & 5:

Lacey Act

Title 16, United States Code, Sections 3372(d) and 3373(d)(3)(A)

**\*Max. Penalty:**      Five (5) Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**