UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-20538-CR-WILLIAMS

UNITED STATES OF AMERICA,

v.

NAI CHUN VINCENT CHEUNG,
a/k/a "Vincent Cheung,"

          **Defendant.**
_____/

**FACTUAL STATEMENT PURSUANT TO FED. R. CRIM. P. 11(b)(3)
AND STIPULATION CONCERNING EVIDENCE ESTABLISHING GUILT**

      **NAI CHUN VINCENT CHEUNG**, the defendant in the above-styled criminal case, hereby states the following:

      1.    I am knowledgeable and personally aware of each of the factual matters summarized throughout this Factual Statement.

      2.    I have also consulted with my attorney regarding the factual assertions set forth in this document and my attorney has assisted me in understanding precisely what has been alleged in each and every paragraph. In addition, I have reviewed with my attorney the various items of evidence and proof which the United States has alleged would be brought forth against me by the government as evidence of my guilt in the event of a trial.

      3.    After having reviewed this Factual Statement, and having consulted with my attorney, I hereby admit and confirm each of the factual assertions set forth below as being true and correct. Moreover, I hereby acknowledge and stipulate to each of the items of potential evidence that have also been set forth in the last four paragraphs of this document, which the

government has set forth as evidence sufficient to establish my guilt as to Count 1 of the Indictment.

**Stipulated Statement of Facts**

4. Upon a consistent and continuous basis throughout the time period alleged in the Indictment, that is, from on or about June 1, 2017 through on or about June 6, 2019, defendant Vincent Cheung engaged in a conspiratorial undertaking with his co-defendant, Michael Pata, together with one other individual co-conspirator who is not currently charged.

5. This conspiracy was designed to benefit both Cheung and Pata financially through certain activities related to the unlawful exportations of various species of turtles from the United States, most of which had been illegally taken and collected from their natural Florida habitat by the co-conspirator, who was then engaged in the process of selling such wild-caught turtles.

6. The sales of wild-caught turtles were known by Cheung and Pata to amount to violations of Florida laws which prohibited such commercial activity, as well as amounting to violations of federal laws that made it unlawful to export wildlife taken, possessed, transported or sold in violation of any state law, such as Florida's laws prohibiting the sale of wild-caught turtles.

7. Three of the turtle species which were acquired by Cheung and Pata from their co-conspirator were also federally protected from unregulated commercial export due to their status as wildlife designated under Appendix II of the "Convention on International Trade in Endangered Species of Wild Fauna and Flora" (commonly referred to as "CITES"). As Cheung and Pata knew, exportations of such species were subject to CITES permit requirements set forth within federal laws and regulations which mandated that a CITES export permit be issued prior to the exportation of any such CITES-protected wildlife and further stated that failure to comply with

this requirement amounted to a violation of federal law.

8. During the course of the conspiracy, Cheung operated from and through his wildlife importation business by the name of "Reptiles Paradise" which was situated in Hong Kong. In this capacity, Cheung would periodically contact Pata by means of email and wireless voice and text messages requesting that Pata purchase specific species of turtles and the desired quantities of each such species.

9. Once supplied with Cheung's itemized requests, Pata would act on behalf of Cheung and acquire the turtles sought by Cheung from their co-conspirator at a location within the Middle District of Florida. During these meetings, the co-conspirator would deliver the wild-caught turtles which Cheung had requested to Pata, who would pack the turtles for shipment and export to Cheung shortly thereafter. Moreover, in those multiple instances in which CITES-protected turtles were also included in Cheung's requested exportations, Pata would, in consultation with Cheung, pack the undeclared CITES-protected turtles in such a manner as to conceal them from cursory inspection by placing them within greater numbers of Florida-protected turtles, which were also illegally obtained from their co-conspirator, and falsely declare them on pertinent export documents as having been acquired through breeding in captivity.

10. In connection with each unlawful exportation, Cheung would wire transfer funds to Pata which would be used to pay or prepay their co-conspirator for the exported turtles. These same funds also included amounts sufficient to pay Pata a "commission" for his efforts.

**Stipulation Concerning Evidence Available to the Government**

11. On March 19, 2019, USFWS inspectors at Miami International Airport discovered twenty-four undeclared Florida Box Turtles, a CITES-protected species, concealed underneath one

or more layers of numerous Florida Mud Turtles, which had been falsely declared as "captive bred." Mud Turtles, although not protected by CITES, are of the type protected by Florida law prohibiting their commercial sale if caught in the wild. The shipment in question was from Pata's wildlife import/export business, "Reptile Paradise," and destined for export to Cheung's business in Hong Kong. Photographs of the contents of the shipping containers and the concealed wildlife were taken on the scene and the shipment was allowed to go on to its destination as part of an investigative effort.

12. On April 16, 2019, Pata's business delivered yet another shipment to Miami International Airport for export to Cheung's business in Hong Kong. On this occasion, an inspection of the shipment revealed forty-nine undeclared CITES-protected Florida Box Turtles and twelve Spotted Turtles, which are also CITES-protected. The turtles were found strategically placed within layers of Mud Turtles in a fashion similar to the manner in which Box Turtles had been concealed in the March 19, 2019 export. Again, photographs of the concealed wildlife were taken on the scene and the shipment was allowed to go on to its destination.

13. On June 6, 2019, Pata was confronted by USFWS Special Agents with the federal inspectors' discoveries and agreed to cooperate in a forthcoming undercover investigation. Pata also provided detailed information concerning the manner and means of the subject historical conspiracy, as well as numerous records corroborating the illegal nature of previous wildlife exports to Cheung. Moreover, for a period of approximately two months thereafter, Pata engaged in numerous internet phone calls, texts and chat sessions with Cheung in which Cheung was recorded making numerous admissions corroborating Pata's claims to Special Agents concerning Cheung's complicity in the conspiracy which has been charged in Count 1 of the Indictment, as

well as Cheung's involvement in the precise same type of further conspiratorial activity, but conducted, unbeknownst to Cheung, in the context of a proactive undercover investigation.

_____      ___10/16/19_____
NAI CHUN VINCENT CHEUNG     Date
Defendant

_____     ___10/16/19_____
MARK RANKIN, ESQ.     Date
Counsel for Defendant

_____     ___10/16/2019_____
PETER B. OUTERBRIDGE     Date
ASSISTANT U.S. ATTORNEY